UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

DONTE THOMAS,

        Plaintiff,                    Case No. 2:25-cv-96

v.                                         Honorable Ray Kent

SARAH SCHROEDER et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that Defendants are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way Defendants are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record

does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant Green. The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Schroeder and Nachtman: Plaintiff's First Amendment retaliation claim, Eighth Amendment conditions of confinement claim against Defendant Nachtman, and claims for violation of MDOC policy. Plaintiff's Eighth Amendment excessive force claims against Defendants Schroeder and Nachtman and Eighth Amendment conditions of confinement claim against Defendant Schroeder remain in the case.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

**Discussion**

I.  **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following MBP staff in their individual capacities: Warden Sarah Schroeder, Correctional Officer/Sergeant Unknown Nachtman, and Doctor of Psychiatry Garrett Green.

Plaintiff alleges that, on August 28, 2024, Defendant Nachtman was escorting Plaintiff to the Brook Center while Plaintiff's cell was being searched. (Compl., ECF No. 1, PageID.3.) On the way to the Brook Center, Defendant Nachtman pulled Plaintiff's arm toward his head, dislocating his shoulder. (*Id.*) Defendant Nachtman then issued Plaintiff a misconduct charge for assault and battery/threatening behavior. (*Id.*, PageID.3–4, 8.) A move team was called, and Plaintiff was placed in a restraint chair with a spit mask over his face. (*Id.*, PageID.3, 7.) However, while Plaintiff was in the restraint chair, Plaintiff heard "someone say [']take him out [of] that restraint chair[.] [H]e want to assault my staff get some chains [and] locks [and] place him in an observation cell and turn his water off.[']" (*Id.*) Plaintiff was then chained and taken to an observation cell. (*Id.*) When Plaintiff asked why he was being taken out of the restraint chair, unidentified "officers" told Plaintiff that it was something that Defendant Schroeder was doing to inmates who assault staff. (*Id.*)

While Plaintiff was chained in the observation cell, Plaintiff was unable to move, eat, or use the bathroom for 72 hours. (*Id.*) After 72 hours, Plaintiff remained in the observation cell for an "extra week," with blood, feces, mold, and bugs. (*Id.*) While in the observation cell, unidentified "nurses and officers" told Plaintiff that he could not have his CPAP machine or his medication for his asthma. (*Id.*, PageID.4, 8.)

4

Plaintiff also alleges that, while in the observation cell, Plaintiff requested to speak with Defendant Green, Plaintiff's mental health provider, but was not permitted to do so. (*Id.*, PageID.4, 7.) Defendant Green walked by Plaintiff's cell without stopping to check on Plaintiff and told Plaintiff that he could not speak with Plaintiff due to Plaintiff's "current status." (*Id.*) When Plaintiff got out of observation and was moved to administrative segregation, Defendant Green told Plaintiff that he was waiting on Plaintiff to move to administrative segregation before seeing him. (*Id.*, PageID.4.) Plaintiff then told Defendant Green, "I needed you when I was having a mental breakdown." (*Id.*)

Plaintiff alleges that the foregoing actions evidenced "deliberate indifference" and were done in retaliation for Plaintiff having received a misconduct charge for assault and battery/threatening behavior. (*Id.*, PageID.3–4, 8.) As a result of the events described within the complaint, Plaintiff seeks monetary and injunctive relief in the form of Defendants being "held accountable." (*Id.*, PageID.5.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility

5

standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    First Amendment Retaliation Claims

Plaintiff alleges that he was subjected to the actions and conditions described in the complaint as "retaliation" for Plaintiff's receipt of a misconduct charge for assault and battery/threatening behavior. (ECF No. 1, PageID.3–4, 8.) Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.*

6

Plaintiff states that the actions taken against him were done because he was accused of assaulting staff, not because he was engaged in protected conduct. As the Sixth Circuit explained in *Thaddeus–X*, "if a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct,' and cannot proceed beyond step one" of the three-step retaliation analysis. *Thaddeus-X*, 175 F.3d at 394; *see Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (holding that insolence is not protected conduct for First Amendment purposes). Therefore, Plaintiff's claim fails to satisfy the first element necessary for a claim of First Amendment retaliation.

Moreover, even if Plaintiff did not violate any prison regulation, Plaintiff does not allege that any speech or conduct protected by the First Amendment prompted Defendants' actions. Plaintiff alleges that, when he asked why he was being taken out of the restraint chair, unidentified "officers" told Plaintiff that it was something that Defendant Schroeder was doing to inmates who assault staff. (ECF No. 1, PageID.3, 7.) Even if this Court were to assume that Plaintiff's question to the officers was protected activity, at the time of his question, he was already being moved to the observation cell. Plaintiff's complaint contains no facts to plausibly suggest that Plaintiff's question prompted any adverse actions, thereby failing to satisfy the element of causation.

Accordingly, for each of the foregoing reasons, the Court will dismiss Plaintiff's First Amendment retaliation claim.

### B. Eighth Amendment Excessive Force Claims

The Eighth Amendment prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.* However, not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1,

9 (1992). "On occasion, '[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)); *Bailey v. Golladay*, 421 F. App'x 579, 582 (6th Cir. 2011).

There is an objective component and a subjective component to this type of Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. Courts ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9–10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). The objective component requires a "contextual" investigation that is "responsive to 'contemporary standards of decency.'" *Id.* at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Although the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of

8

decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

Plaintiff alleges that he was being compliant when Defendant Nachtman pulled his arm toward his head, dislocating his shoulder. (ECF No. 1, PageID.3.) Taking Plaintiff's allegations as true, as is required at this stage of the litigation, the Court will allow Plaintiff to proceed with his Eighth Amendment claim against Defendant Nachtman at this time.

The same is true of Plaintiff's complaint against Defendant Schroeder. Plaintiff alleges that he spoke with Defendant Schroeder during his time in the observation cell, while restrained so tightly that he was unable to use the bathroom. (*Id.*) While the use of restraints does not necessarily violate the Eighth Amendment, restraining a compliant inmate in an uncomfortable position without access to the toilet for an extended period could rise to the level of an Eighth Amendment violation. *Compare Hartsfield v. Vidor*, 199 F.3d 305, 309–10 (6th Cir. 1999) (finding that the placement in hard top-of-bed restraints for 18 hours was not cruel and unusual punishment, where testimony and documentation showed that plaintiff was allowed adequate toilet breaks and water) *with Barker v. Goodrich*, 649 F.3d 428, 434 (6th Cir. 2011) (holding that restraining the nonresistant plaintiff behind his back for twelve hours, during which time he missed a meal, experienced pain, and was unable to access water or the restroom could violate the Eighth Amendment's prohibition on the use of excessive force and on confinement in unconstitutional conditions). Given the foregoing precedent and drawing all reasonable inferences in Plaintiff's favor, Plaintiff's Eighth Amendment claim against Defendant Schroeder cannot be dismissed on screening.

However, Plaintiff also alleges that, after Defendant Nachtman's use of force, the "move team" was called and Plaintiff was placed in a restraint chair. (ECF No. 1, PageID.3.) Plaintiff was

9

then chained and moved from the restraint chair to an observation cell, where he remained in restraints. (*Id.*) Plaintiff does not name any members of the move team as defendants in this action.

As with any § 1983 claim, "each [g]overnment official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 676. Thus, it remains Plaintiff's obligation to attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544. Because Plaintiff does not allege any facts that would plausibly suggest that any of the named Defendants were involved in Plaintiff's placement in the restraint chair, Plaintiff fails to state claims against the named Defendants related to these allegations.

        **C.**      **Eighth Amendment Conditions of Confinement Claim**

Plaintiff also alleges that, while in the observation cell, Plaintiff faced "inhumane" conditions, unable to eat while restrained and with "blood, feces, molded [sic] & bugs everywhere." (ECF No. 1, PageID.3.) As it relates to Plaintiff's claim regarding the conditions of his confinement, the Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes*, 452 U.S. at 345–46. The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part

of the penalty that criminal offenders pay for their offenses against society.'" *Hudson*, 503 U.S. at 9 (quoting *Rhodes*, 452 U.S. at 347). Consequently, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

Like the above claim of excessive force, for a prisoner to prevail on an Eighth Amendment conditions of confinement claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836.

Here, Plaintiff indicates that, while he was in the observation cell under the aforementioned conditions, he asked Defendant Schroeder, "[W]hy am I being treated like this[?]" (ECF No. 1, PageID.3.) Defendant Schroeder responded, "[B]ecause [of] your actions towards Sgt. Nachtman." (*Id.*) Taking this exchange as true, the Court finds that Plaintiff's Eighth Amendment conditions of confinement claim against Defendant Schroeder cannot be dismissed on screening. However,

as Plaintiff does not allege facts that would suggest that any other named Defendant was aware of the conditions of Plaintiff's observation cell, the Court will dismiss any conditions of confinement claims against the remaining Defendants.

### D.    Eighth Amendment Medical Care Claim

Plaintiff further alleges that he was not provided with mental health care while in the observation cell. (ECF No. 1, PageID.4.) Plaintiff states that an unidentified individual told Plaintiff that he was not in the observation cell for suicide observation and, therefore, could not see his psychiatrist, and that Defendant Green told Plaintiff that he could not see Plaintiff on Plaintiff's "current status." (*Id.*) Plaintiff also alleges that Defendant Green would pass by the observation cell but would not check on Plaintiff. (*Id.*)

"The Supreme Court has long recognized that the government has a constitutional obligation to provide medical care to those whom it detains." *Griffith v. Franklin Cnty.*, 975 F.3d 554, 566 (6th Cir. 2020) (citing *Estelle*, 429 U.S. at 104; *Rhinehart v. Scutt*, 894 F.3d 721, 736–37 (6th Cir. 2018); *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004)). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle*, 429 U.S. at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore*, 390 F.3d at 899; *see Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

First, Plaintiff does not indicate the nature of his need for mental health care while in the observation cell. He alleges that he later spoke with Defendant Green and told Defendant Green that he needed Defendant Green when he "was having a mental breakdown" (ECF No. 1, PageID.4), but Plaintiff fails to describe the "mental breakdown" with sufficient facts that would allow the Court to infer that Plaintiff was facing a need for medical care posing a substantial risk of serious harm.

Second, even assuming that Plaintiff had satisfied the objective prong, Plaintiff fails to plausibly suggest that Defendant Green was subjectively aware of a substantial risk of serious harm to Plaintiff at the time that Plaintiff was in the observation cell such that the refusal to see Plaintiff during that time could be said to amount to deliberate indifference. (*Id.*) Indeed, Plaintiff fails to provide the Court with any facts regarding what Defendant Green knew at the time that Plaintiff was confined other than the fact that he was unable to see Plaintiff because of Plaintiff's "status." (*Id.*) Consequently, the Court will dismiss Plaintiff's Eighth Amendment medical care claim for failure to state a claim.

### E. Violation of MDOC Policies

Plaintiff alleges that he was held in the observation cell for an "extra week," presumably in violation of MDOC policy. (ECF No. 1, PageID.3.) To the extent that Plaintiff seeks to bring

13

an independent claim for this alleged violation, claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Therefore, Plaintiff's assertion that Defendants violated MDOC policy fails to state a claim under § 1983.

## Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Having conducted the review required by the PLRA, the Court determines that Defendant Green will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Schroeder and Nachtman: Plaintiff's First Amendment retaliation claim, Eighth Amendment conditions of confinement claim against Defendant Nachtman, and claims for violation of MDOC policy. Plaintiff's Eighth Amendment excessive force claims against Defendants Schroeder and Nachtman and Eighth Amendment conditions of confinement claim against Defendant Schroeder remain in the case.

An order consistent with this opinion will be entered.

Dated:   June 9, 2025                                 /s/ Ray Kent
                                                     Ray Kent
                                                     United States Magistrate Judge